UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| BRIAN KENDRICK, | |
| Plaintiff, | |
| v. | CAUSE NO. 3:24-CV-1007-PPS-JEM |
| RON NEAL, et al., | |
| Defendants. | |

OPINION AND ORDER

Brian Kendrick, a prisoner without a lawyer, is proceeding in this case on two claims. First, there are the set of claims against Officer Kevin Cross, Lieutenant Nadine Smith-Robinson, Officer Darnell Crockett, Sergeant Jeniene Walton, Lieutenant Dennis Koen, Jacqueline Mayes, and Dr. Christina Chico "in their personal capacity for money damages for denying him medical care for injuries he suffered in a January 2023 fire in violation of the Eighth Amendment." ECF 7 at 10. Second, there are the claims against Commissioner Christina Reagle, Warden Ron Neal, Assistant Warden Dawn Buss, Major Douglas Wardlow, Safety Hazard Manager Deborah Taylor, and Supervisor of Fire Training Gordon Beecher "in their personal capacity for monetary damages for deliberate indifference to the risk of harm posed by a fire that occurred in January 2023 in violation of the Eighth Amendment[.]" *Id.* at 10-11.

All of the defendants except Dr. Chico now seek summary judgment, arguing Kendrick did not exhaust his available administrative remedies before filing this lawsuit. ECF 31. The matter is fully briefed. ECF 43, 44, 47, 54. I'll refer to this group of

defendants as "the State Defendants." Dr. Chico filed a separate motion for summary judgment, also arguing Kendrick did not exhaust his administrative remedies before filing this lawsuit. ECF 26. Kendrick has not filed a response to Dr. Chico's summary judgment motion, and the time for doing so has expired.[1] I will now rule on both summary judgment motions.

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists when "the evidence is such that a reasonable [factfinder] could [find] for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To determine whether a genuine issue of material fact exists, I must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Heft v. Moore*, 351 F.3d 278, 282 (7th Cir. 2003). A party opposing a properly supported summary judgment motion may not rely merely on allegations or denials in its own pleading but must "marshal and present the court with the evidence she contends will prove her case." *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010).

Prisoners are prohibited from bringing an action in federal court with respect to prison conditions "until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "[A] suit filed by a prisoner before administrative remedies have been exhausted must be dismissed; the district court lacks discretion to resolve the

---

[1] I will consider the arguments Kendrick raises in his response to the State Defendants' summary judgment motion in ruling on Dr. Chico's summary judgment motion.

claim on the merits, even if the prisoner exhausts intra-prison remedies before judgment." *Perez v. Wis. Dep't of Corr.*, 182 F.3d 532, 535 (7th Cir. 1999); *see also Chambers v. Sood*, 956 F.3d 979, 984-85 (7th Cir. 2020). "Failure to exhaust is an affirmative defense that a defendant has the burden of proving." *King v. McCarty*, 781 F.3d 889, 893 (7th Cir. 2015), *overruled on other grounds by Henry v. Hulett*, 969 F.3d 769 (7th Cir. 2020).

The law takes a "strict compliance approach to exhaustion." *Lockett v. Bonson*, 937 F.3d 1016, 1025 (7th Cir. 2019) (citation omitted). To exhaust remedies, "a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Id.* (citation omitted). But inmates are only required to exhaust administrative remedies that are "available." *Woodford v. Ngo*, 548 U.S. 81, 102 (2006). The availability of a remedy is not a matter of what appears "on paper," but rather whether the process was in actuality available for the prisoner to pursue. *Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006). When prison staff hinder an inmate's ability to use the administrative process, administrative remedies are not considered "available." *Id.*

The defendants provide a copy of the Offender Grievance Process, an affidavit from the Grievance Specialist at Indiana State Prison ("ISP"), and Kendrick's grievance records, which show the following facts: During all relevant times, an Offender Grievance Process was in place at ISP and available to Kendrick. ECF 31-2 at 2-3. The Offender Grievance Process requires an inmate to complete three steps before filing a lawsuit: (1) a formal grievance; (2) a Level I appeal to the warden; and (3) a Level II appeal to the Department Grievance Manager. *Id.* at 3; ECF 31-3 at 3. Specifically, an inmate must first submit a formal grievance to the grievance office and wait for a

3

response. *Id.* at 9-10. The Grievance Specialist will screen the grievance and issue a receipt within ten business days, and then issue a response to the grievance within fifteen business days from the date the grievance is recorded. *Id.* at 10. If the inmate is dissatisfied with the grievance office's response to his grievance, he can initiate a Level I appeal to the warden by completing the appropriate sections of State Form 45473 ("Grievance Appeal form") and submitting the form to the grievance office within five days of receiving the grievance response. *Id.* at 12. The warden's response to the Level I appeal will be issued within ten business days of receipt of the appeal. *Id.* at 13. Then, if the inmate is still dissatisfied after receiving the warden's response to his Level I appeal, or if he receives no response from the warden within the ten-day deadline, he can initiate a Level II appeal to the Department Grievance Manager by checking the "Disagree" box, signing, and submitting the completed Grievance Appeal form to the grievance office. *Id.*

Kendrick's grievance records show the following: On January 19, 2023, Kendrick submitted Grievance 151907, complaining prison staff inadequately responded to the January 14 fire. ECF 31-9 at 6. The grievance office received this grievance on February 13, 2023. *Id.* at 7. On February 28, 2023, the grievance office issued a receipt for Grievance 151907. *Id.* That same day, the grievance office issued a response denying Grievance 151907 on its merits because "It took less than 20 minutes to evacuate your range" and "Staff were moving as quickly as possible." *Id.* at 5.[2] On March 2, 2023,

---

[2] The Offender Grievance Response Report also stated Grievance 151907 was "submitted outside of time frame," but the grievance office addressed Grievance 151907 on its merits and did not return it as untimely. ECF 31-9 at 5.

4

Kendrick signed the Offender Grievance Response Report and checked that he disagreed with the response. *Id.* at 4. On March 10, 2023, a Grievance Appeal form was sent to Kendrick. *Id.* at 2. On March 20, 2023, Kendrick submitted the completed Grievance Appeal form, successfully initiating a Level I appeal. *Id.* Kendrick improperly filled out the portion of the Grievance Appeal form reserved for the warden's response, and checked the box indicating he wished to appeal the warden's response to the Department Grievance Manager, even though he had not yet received a response from the warden. *See id.*; ECF 31-2 at 8. On March 27, 2023, the grievance office issued a receipt for Kendrick's Level I appeal, noting the warden's response was due by April 11, 2023. ECF 31-9 at 3. On March 28, 2023, the warden issued a response denying Kendrick's Level I appeal. *Id.* at 1. At this point, Kendrick needed only to return the Grievance Appeal form to the grievance office to initiate a Level II appeal to the Department Grievance Manager. ECF 31-2 at 8-9.[3] But Kendrick did not return the Grievance Appeal form to the grievance office or take any other steps to initiate a Level II appeal. *Id.*; ECF 31-9 at 1-2.[4]

Here, the defendants have provided evidence Kendrick did not fully exhaust Grievance 151907, as he never initiated a Level II appeal to the Department Grievance Manager after he received the warden's response denying his Level I appeal. The fact that Kendrick attempted to initiate a Level II appeal at the same time he submitted his

---

[3] Kendrick already had checked the "Disagree" box and signed the Grievance Appeal form, so the only remaining step was to return the Grievance Appeal form to the grievance office. *See* ECF 39-1 at 2.

[4] Kendrick also could have initiated a Level II appeal by checking the "Disagree" box, signing, and returning the Offender Grievance Response Report to the grievance office. *See* ECF 39-1 at 1; ECF 31-2 at 8-9. But he did not do so. *Id.*

Level I appeal on March 20 did not comply with the Offender Grievance Process, as the Offender Grievance Process required him to take this step *after* he received the warden's response to his Level I appeal. ECF 31-3 at 13; *see Taylor v. Birshir*, No. 3:20-CV-865-MGG, 2022 WL 558333, at *2 (N.D. Ind. Feb. 24, 2022) ("Mr. Taylor cannot show he exhausted his remedies by attempting to submit a Level II appeal before his Level I appeal had been denied.").

In his summary judgment response, Kendrick does not allege or provide any evidence he took any steps to initiate a Level II appeal after he received the warden's response denying his Level I appeal. I therefore accept as undisputed that Kendrick did not fully exhaust Grievance 151907. Instead, Kendrick argues the grievance office made his administrative remedies unavailable because he never received any receipt or response from the grievance office for Grievance 151907. ECF 44 at 3; ECF 47 at 4, 7-9. Specifically, he asserts: "I have attested to timely submitting my grievance on approximately January 19, 2023, and subsequently did not receive a response thereto, which precluded me from proceeding further." *Id.* at 7.

Kendrick seems to be arguing he never received any receipt or response whatsoever from the grievance office for Grievance 151907. The record refutes this argument, as it shows Kendrick received and signed the Offender Grievance Response Report for Grievance 151907 on March 2, 2023, and followed up by submitting a Grievance Appeal form which was received by the grievance office. ECF 31-9 at 2-4. Regardless, even accepting as true that Kendrick never received any receipt or response from the grievance office for Grievance 151907, the Offender Grievance Process still

6

provided Kendrick with an available remedy he did not exhaust. Specifically, the Offender Grievance Process provides that, in the event an inmate submits a grievance and never receives any receipt or response from the grievance office, "the offender shall notify the Offender Grievance Specialist of that fact (retaining a copy of the notice) and the Offender Grievance Specialist shall investigate the matter and respond to the offender's notification within ten (10) business days." ECF 31-3 at 9. Kendrick does not argue or provide any evidence he complied with this requirement, which was a necessary step to exhaust the grievance. *See Lockett*, 937 F.3d at 1027 (even accepting as true that the inmate filed a grievance, he must provide evidence he contacted the Grievance Specialist when he received no response to his grievance); *Lipscomb v. Galipeau*, No. 3:22-CV-106-JD-MGG, 2023 WL 1778435, at *3 (N.D. Ind. Feb. 6, 2023) (granting summary judgment to the defendant because the inmate did not notify the Grievance Specialist after not receiving a response to his grievance); *Rambo v. Smiley*, No. 3:18-CV-740-JD-MGG, 2020 WL 1157865, at *4 (N.D. Ind. Mar. 10, 2020) (same).

Alternatively, Kendrick may be attempting to argue he never received any receipt or response to his Level I appeal to the warden. But even so, the Offender Grievance Process still provided him with an available remedy he did not exhaust. Specifically, the Offender Grievance Process provides that, in the event an inmate submits a Level I appeal to the warden and does not receive a response from the warden within ten business days of the warden's receipt of the appeal, the inmate may proceed to initiate a Level II appeal to the Department Grievance Manager. ECF 31-3 at 13 ("If, after receipt of the appeal response, the offender is still dissatisfied, *or no response*

7

*is received within the time frame*, they may appeal to the Department Offender Grievance Manager.") (emphasis added). It is undisputed the warden received Kendrick's Level I appeal on March 27, 2023, and the warden's response was due by April 11, 2023. ECF 31-9 at 3. Kendrick does not argue or provide any evidence he took any steps to initiate a Level II appeal after the warden's timeline to respond to his Level I appeal had expired. And again, the fact that Kendrick tried to initiate a Level II appeal at the same time he submitted his Level I appeal on March 20 does not comply with the requirements of the Offender Grievance Process, as Kendrick took this step before the warden had even received his Level I appeal. *See id.*; *Taylor*, 2022 WL 558333, at *2.

Accordingly, the defendants have provided undisputed evidence showing Kendrick did not fully exhaust Grievance 151907, as it is undisputed he never submitted a Level II appeal after his Level I appeal was denied. Kendrick does not challenge this evidence, and does not allege or provide any evidence he submitted any other relevant grievance or his administrative remedies were in any way unavailable. Therefore, the defendants have met their burden to show Kendrick did not exhaust his available administrative remedies before filing this lawsuit. Summary judgment is warranted in their favor.[5]

For these reasons, the court:

(1) GRANTS the defendants' motions for summary judgment (ECF 26; ECF 31); and

---

[5] Because the undisputed facts show Kendrick did not fully exhaust Grievance 151907, I do not reach Dr. Chico's alternative argument that Grievance 151907 did not relate to her.

(2) DIRECTS the clerk to enter judgment in favor of the defendants and against Brian Kendrick and to close this case.

**SO ORDERED**.

ENTERED: December 12, 2025.

/s/ Philip P. Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT